UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **THE FLAVIN ORGANIZATION L L C** | **CASE NO. 2:22-CV-02552** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **AXIS SURPLUS INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment" (Doc. 15) filed by Defendant AXIS Surplus Insurance Company ("AXIS") wherein the insurer moves for judgment as a matter of law as to Plaintiff, The Flavin Organization, LLC's ("FO") claims for bad faith, loss of rent, Hurricane Delta and additional property damage. AXIS maintains that these claims are not assignable because they did not exist at the time of the assignment by Flavin Investments, LLC ("FIL") to FO.

## FACTUAL STATEMENT

On or about August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana. During the relevant time period, Defendant AXIS issued an insurance policy to FIL, which provided $1.5 million in building coverage over property located at 3221 Ryan Street, Lake Charles, Louisiana, as well as business interruption and other coverages.[1]

---

[1] Defendant's exhibit A.

It is undisputed that Hurricane Laura caused damage to the FIL property; it is alleged but disputed that Hurricane Delta caused damage to the property. FIL made a Hurricane Laura claim for damages to the Ryan Street property.[2] Tim Flavin handled the claim on behalf of FIL.[3] Tim Flavin never made a claim for damages to the property as a result of Hurricane Delta.[4]

A field adjuster inspected the property on September 8, 2020.[5] On or about October 7, 2020, FIL issued an advance of $50,000.00.[6] On October 29, 2020, an additional payment was made to FIL.[7] AXIS issued payments based on its estimates and agreed to a difference of $3,987.60 plus a holdback of $41,316.45 for depreciation.[8] FIL was paid all depreciation within 30 days of submitting its documents.[9] After paying this amount, AXIS closed the claim file for FIL; FIL did not submit additional estimates to AXIS, nor any proofs of loss regarding additional damage.[10] Plaintiff, FO, as assignee, now disputes that it settled or released its claim; FO alleges that it has discovered additional damages caused by Hurricanes Laura and Delta.

On either November 20 or December 2, 2021, FIL provided an assignment of rights to FO.[11] FIL did not advise AXIS of any additional damages and did not supplement a

---

[2] Defendant's exhibit C, Tim Flavin Deposition, pp. 25-26.
[3] *Id.*
[4] Plaintiff's exhibit C, Tim Flavin Deposition, p. 100.
[5] *Id.* pp. 29-30.
[6] *Id.* pp 39-40.
[7] *Id.* pp. 34--35.
[8] *Id.* pp. 43-44.
[9] *Id.* p. 57.
[10] *Id.* pp. 57-59.
[11] *Id.* p. 65.

claim through the date of the assignment.[12] At the time of the assignment, all repairs had been completed.[13]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[12] *Id.* p. 64.
[13] *Id.* pp. 65, 68, and 74.

133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

AXIS moves to dismiss Plaintiff, FO's claims for additional property damages, bad faith, loss of rent and Hurricane Delta claim. AXIS maintains that these claims did not exist at the time of the Assignment from FIL to FO. AXIS remarks that the property was sold to FO on October 30, 2020, with a waiver of redhibition and without a warranty of fitness. AXIS argues that the sale did not include an assignment of rights for FO to continue to pursue and collect on its insurance claim after the sale of the property. FO argues that as part of the sale, it retained all rights under the policy and maintained the right to bring an action against AXIS relevant to the adjustment of the claims within two years of the Loss Events.[14]

On March 1, 2021, FIL confirmed that all payments had been issued regarding the Hurricane claim, and AXIS was closing its file.[15] As of March 1, 2021, FIL had no further communications with AXIS, nor did it submit any additional estimates or proof of loss for additional damage.[16]

---

[14] Defendant's Exhibit 1, Doc. 15-6, Act of Sale.
[15] Defendant's exhibit C, T. Flavin deposition, pp. 57-59.
[16] *Id.*

Page 4 of 11

FO alleges that it discovered additional moisture related damages in early November 2021, after its tenant moved out when the lease terminated in October of 2021. Instead of reporting the damage, Tim Flavin, on behalf of FIL, assigned FIL's rights to FO via an Assignment of Post-Loss Insurance Claims and Limited Power of Attorney (the "Assignment"). The Assignment assigned FIL's rights under the subject policy to FO as to any and all damage caused by the Loss Events. On November 30, 2021, Beau Flavin executed the assignment on behalf of FO, and on December 2, 2021, Tim Flavin executed the Assignment on behalf of FIL.[17]

On February 11, 2022, Plaintiff, through its legal counsel, sent AXIS a letter of representation explaining, among other things, that "the amounts paid to your Insured to date are woefully inadequate to complete the necessary repairs."[18] On December 9, 2022, Plaintiff, through its attorneys, provided AXIS with a detailed report and estimate provided by public adjuster Integrity Claims Consultants, LLC (ICC).[19] In the ICC report, AXIS was put on notice that the total repair costs for the Property from damages caused by Hurricane was $546,928.63.[20] Despite receiving this estimate FO complains that AXIS has not tendered any payments to Plaintiff.[21] Since that time, FO retained C2 Development who has estimated the outstanding repair costs to the interior and exterior of the building to be $1,098,822.00.[22]

---

[17] Plaintiff's exhibit A, B. Flavin affidavit at ¶ 7, Plaintiff's exhibit D.
[18] Plaintiff's exhibit A, B. Flavin affidavit, ¶ 8; Plaintiff's exhibit E, Letter of Representation.
[19] Plaintiff's exhibit A, B. Flavin affidavit, ¶ 9.
[20] Plaintiff's exhibit A, ¶ 9; Plaintiff's exhibit F, ICC Estimates.
[21] Plaintiff's exhibit A, B. Flavin Affidavit, ¶ 10.
[22] Plaintiffs exhibit G, C2 Development Estimates.

AXIS argues that at the time of the Assignment, either November 30, 2021 or December 2, 2021: (1) FIL had no loss of rent as a result of Hurricane Laura; (2) FIL's property damage claim for the Ryan Street property had been fully resolved as to all known damage and nothing additional had been submitted to Defendant which had not been fully and satisfactorily addressed; (3) FIL was satisfied with the adjustment of the claim, and thus, no bad faith claim, and (4) FIL had made no Hurricane Delta claim.

In Louisiana, all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor. Louisiana Civil Code article 2642. Under Louisiana law, an assignee steps into the shoes of the assignor and acquires only those rights possessed by the assignor at the time of the assignment, *Conerly Corp. v. Regions Bank*, 668 F.Supp.2d 816 (E.D. La. 2009) and the assignee acquires no greater rights, nor anything more than the assignor has. *TCC Contractors, Inc. v. Hospital Services Dist. No. 3 of the Parish of Lafourche*, 52 So.3d 1103 (La.App. 1. Cir. 12/8/10). The right to pursue damages for an insurer's failure to comply with its duties is not a strictly personal obligation. See *Steirwald v. Phoenix Ins. Co.* 2001 WL 617542 at *2 (E.D. La. May 30, 2001). Although the insurer's duties are owed only to the insured, "claims for breach of [those] duties [may] be asserted by … someone who derives his right from the insured." *Id.* [quoting William Shelby McKenzie and H. Alston Jonson, Insurance Law and Practice, 15 Louisiana Law Treatise at ¶ 222].

*Assignment*

FIL assigned its rights to FO; the Assignment includes the following pertinent language:

> Seller [FIL] does hereby assignee unto Buyer [FO], all of its right, title and interest in and to the Initial Claim and any and all other claims arising out of any loss or damage to the Property, including but not limited to, all rights, title and interest in and to any claims initiated under the Policy as a result of loss or damage to the Property caused by or arising from the Loss Events (collectively, the "Claim" or "Claims"), and specifically including (i) the rights to receive any and all additional insurance proceeds that are paid by the Seller's Insurer as a result of all loss or damage arising from or caused by each of the Loss Events described above, and (ii) any and all other contractual rights arising out of the Claim. This assignment includes, but is no limited to, an assignment of all rights in and to the Claims and the rights to receive all insurance proceeds paid by the Insurer in connection with said Claims, as well as any and all rights, title and interest to assert any claims and collect any additional sums owed or paid for statutory penalties and attorneys fees and other relief as a result of or arising from an Insurer's bad faith failure to timely adjust and settle claims arising under applicable State and Federal law, including claims arising under Louisiana Revised Statute 22:1973. (All such amounts or to be paid by the Insurer in connection with the Claims being hereinafter referred as the "Proceeds").[23]

The Court has reviewed the Assignment and finds that it is a valid assignment of rights and allows FO to pursue the alleged claims against AXIS under the Policy.

*Loss of rent*

AXIS argues that because there was no loss of rent claim prior to the Assignment, as a matter of law, FO can have no claim for loss of rent. *Del-Remy Corp. v. Lafayette Ins. Co.*, 616 So.2d 231, 233 (La.App. 1993).

AXIS informs the Court that FIL indicated that it had lost power to the building for three (3) weeks, and it was still paid rent from the tenant.[24] AXIS also argues that FO does not have a claim for loss of business opportunity. AXIS argues that FO has no claim for

---

[23] Plaintiff's exhibit D, p. 2.
[24] Defendant's exhibit C, pp. 40-41; Defendant's exhibit C-15, Email regarding loss of rental payments.

loss or rent or business opportunity because it had not submitted a claim for loss of rent or business opportunity at the time of the assignment.

FO argues that whether or not FIL submitted a claim for loss of rent or business opportunity is irrelevant, rather the issue is whether FO owns the legal right under the Policy to pursue the claim. FO maintains that these contractual claims were lawfully assigned to it and remain viable and timely when the suit was filed.

The Court agrees that the first issue is whether FO owns the legal fight under Policy to pursue the claim. However, FO has failed to submit any summary judgment evidence to create a genuine issue of material fact for trial that it or FIL had any loss of rent or business opportunity.  Consequently, the Court will dismiss FO's loss of rent or business opportunity.

*Hurricane Delta claim*

AXIS maintains that the time limit for the submissions of proof of loss (180 days) has lapsed as to FO's Hurricane Delta claim. Thus, FO's claim for Hurricane Delta has prescribed. AXIS cites Louisiana Revised Statute 22:1264(A),[25] which does not state that the claim will be prescribed if proof of loss is not made within 180 days. It does state that proofs of loss are to be made within 180 days.  Additionally, AXIS argues that the Delta claims must be dismissed because FLI did not make a claim prior to the Assignment.

FO relies on the report or estimate authored by Stevephen Lott of Integrity Claims Consultants, LLC ("ICC") for $546,928.63, which FO states was received by AXIS on

---

[25] AXIS referred to La. R.S. 22:164(A).

December 9, 2022.[26] The Court notes that a significant portion of the claim includes alleged exterior damage, including brick cracking, and cracked and/or chipped windows, ect. all of which would have been clearly visible prior to the tenant moving out. Furthermore, the report fails to note that the estimate was prepared as a result of Hurricane Delta.

Additionally, the 3-page report or estimate, author unknown, by C2 Development, LLC ("C2") for $1,098,822.00 dated February 25, 2023, does not mention Hurricane Delta. Again, the Court notes that the majority of this damage is for the exterior, all of which would have been visible prior to the tenant moving out of the building.

The Policy allows a legal action to be filed within two (2) years of the covered loss. The February 11, 2022 letter to AXIS from counsel for FO notified the insurer of the Hurricane Delta claim. Hurricane Delta made landfall on October 9, 2020. The lawsuit was filed August 9, 2022. The Hurricane Delta claim is not prescribed.

*Bad faith claims*

FO argues that because bad faith did not exist at the time of the Assignment, FO cannot bring a bad faith claim based on interactions (post-assignment) between FO and AXIS. In other words, any alleged bad faith that occurred between FO and AXIS after the Assignments was executed, is not assignable because there was no bad faith between FIL and AXIS.

---

[26] Plaintiff's exhibit F.

The Court notes that concerning the alleged new damage, to the extent that the damages was caused by the Hurricanes, it existed prior to the assignments and thus FO is entitled to bring a bad faith claim. That right existed both prior to the date of the Assignment and after the date of the Assignment. The Court finds that the bad faith claims accrued prior to the Assignment, therefore, FIL's s bad faith claims were assignable based on Louisiana jurisprudence cited herein.

However, FO will have the burden at the trial of this matter to prove that AXIS was in bad faith. FO chastises AXIS for making only one inspection.  Noteworthy, is the fact the Tim Flavin did not contradict or attempt to question the inspection and estimate of repair, the invoices submitted for the repairs, and/or disagree with the payments AXIS made to FIL.

FO complains that AXIS made no attempt to inspect the property for additional damages.  The Court finds this complaint illogical; AXIS had no reason to perform an additional inspection. Tim Flavin confirmed with AXIS that there were no additional damages, and the claim file could be closed. The alleged additional damages were not discovered until well over a year after both Hurricanes and after the owner of the building confirmed that the claim file could be closed. Additionally, as noted herein, a significant portion of alleged damages now claimed by FO are for exterior damage. Therefore, FO's suggestion that these additional damages were not discoverable until the tenant moved out is suspect. Be that as it may, the Court is hesitant to dismiss a bad faith claim, which should ultimately be decided by the jury.

## **CONCLUSION**

For the reasons set forth herein, the Court will grant in part and deny in part the Motion for Partial Summary Judgment" (Doc. 15) filed by Defendant AXIS Surplus Insurance Company.  The Motion will be granted to the extent that Flavin Organization, LLC's claim for loss of rent or business opportunity will be dismissed; otherwise, the motion will be denied.

**THUS DONE AND SIGNED** in Chambers on this 4th day of October, 2023.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**